**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RONALD CLARK,**

      **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**CASE NO. 2:08-cv-1018
JUDGE GREGORY L. FROST
MAGISTRATE JUDGE E.A. PRESTON DEAVERS**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**FACTS and PROCEDURAL HISTORY**

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Athens County Grand Jury indicted Clark for three counts of unlawful sexual conduct with a minor. Clark entered not guilty pleas and eventually his cases were set for a jury trial. Clark fired his first retained attorney. Two days before his scheduled jury trial, Clark's second retained attorney filed a motion for a competency evaluation. The court continued the jury trial so that it could hold a competency hearing.
>
> At the hearing, the court considered the affidavits of two witnesses and a statement by Clark's counsel. All three indicated that Clark recently ranted and raved about his case

and thought that everyone was out to get him. The court gave Clark time to respond to the two witnesses and his attorney. Clark agreed with the witnesses and his attorney. The court denied Clark's request for a competency evaluation.

On the morning of Clark's jury trial, Clark asked the court to discharge his second attorney and grant him a continuance so that he could hire a third attorney for the trial. Clark explained on the record his reasons for the request. The court denied Clark's request.

The jury found Clark guilty of all three counts of unlawful sexual conduct with a minor. The court sentenced Clark to a non-minimum prison term.

Clark appeals and asserts the following four assignments of error: I. "The trial court erred by denying Mr. Clark's request to discharge his attorney and to retain new counsel without an adequate hearing." II. "The trial court abused its discretion by not referring Mr. Clark for a competency evaluation." III. "The trial court erred by imposing a non-minimum prison term in violation of the Due Process Clause of the Fourteenth Amendment [to the] United States Constitution." And, IV. "The trial court erred by imposing post-release control."

*State v. Clark*, No. 07CA9, 2007 WL 4328051 (Ohio App. 4th Dist. Dec. 5, 2007). On December 5, 2007, the appellate court affirmed the judgment of the trial court. *Id.* On May 7, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Clark*, 117 Ohio St.3d 1498 (2008). On July 9, 2008, the Ohio Supreme Court denied petitioner's motion for reconsideration. *State v. Clark,*118 Ohio St.3d 1511 (2008).

On October 29, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

2

1.  Denial of counsel.

On the eve of trial, petitioner learned that counsel failed to file for an alibi defense and subpoena witnesses in support thereof so he moved to have retained counsel removed so he could retain another attorney at his expense.  The trial court denied his request, failed to inquire further, and forced petitioner to proceed to trial with an attorney who then stated: "I don't even want to help him."  Petitioner's Sixth Amendment right to counsel was violated.

2.  The trial court failed to make adequate inquiry into petitioner's dissatisfaction of counsel.

On the eve of trial when petitioner brought to the attention of the trial court his dissatisfaction of retained counsel for his failure to properly file a notice of alibi defense, the court failed to make appropriate inquiry into that dissatisfaction according to law and thus denied petitioner his right to adequate counsel pursuant to the Sixth Amendment.

3.  Petitioner's sentence violates the Due Process Clause of the U.S. Constitution.

The Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1 (2006), excising various sentencing elements enacted by the Ohio General Assembly and permitting petitioner to be sentenced without due process of law violates his Sixth and Fourteenth Amendment rights to trial by jury and due process of law.

It is the position of the Respondent that claims one and two are without merit, and claim three is procedurally defaulted.

## CLAIMS ONE AND TWO

In claim one, Petitioner asserts that he was denied the right to counsel because the trial court refused to permit him to hire a new attorney on the first day of trial, based his

3

alleged conflict with his then-retained defense counsel due to his attorney's failure, *inter alia*, to subpoena alibi witnesses.  *See Traverse.*  In claim two, petitioner asserts that he was denied due process because the trial court failed to conduct an adequate inquiry into petitioner's dissatisfaction with retained counsel to determine whether there existed a conflict of interest or irreconcilable differences such that petitioner was entitled to hire a new attorney.  Because these claims are closely related, the Court will consider them together here.  The state appellate court rejected Petitioner's claims as follows:

> Clark contends in his first assignment of error that the trial court erred in denying his request for a continuance to enable him to retain other private counsel. Clark asserts that the court failed to conduct an adequate hearing to investigate his complaint against his current counsel, i.e., his counsel did not, *inter alia*, present alibi witnesses.

> The trial court has discretion to grant or deny a request for a continuance. *State v. Unger* (1981), 67 Ohio St.2d 65, syllabus. Likewise, it has the same discretion to grant or deny a substitution of counsel. "An abuse of discretion connotes more than an error of judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 137-138, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169.

> "In evaluating a motion for a continuance, a court should note, *inter alia:* the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors,

depending on the unique facts of each case." *Unger, supra*, at 67-68.

Here, the trial court did not abuse its discretion when it refused to continue the trial. First, Clark did not ask for a specific amount of time to obtain other counsel. However, even if he obtained different counsel right away, it would take his counsel at least a week or two to familiarize himself with the case. Second, Clark filed a motion for a competency evaluation two days before his first scheduled jury trial. The court granted his request for a hearing and continued the jury trial. So, the court already continued the trial once. Third, Clark waited until the morning of his second scheduled jury trial to request the continuance. The jurors, witnesses, opposing counsel, and the court were present and ready to proceed.

Fourth, the court by implication determined that the requested delay was not for a legitimate reason. Clark told the court that he was not receiving adequate representation. However, the court informed Clark that "[w]e've been through this once before. You terminated the services of another attorney, if you recall that. And now you have [an attorney] who, despite what you think, has vigorously represented you."

Fifth, the record shows that Clark contributed to the circumstance that gave rise to his request for a continuance. Part of what Clark said shows that he does not understand the law. For example, he said, "I never had a preliminary hearing. That's a dismissal right there. My indictments wasn't (sic) certified. That's a dismissal. The Bill of Particulars ain't certified. That a dismissal straight out of the law book." Clark was not willing to listen to his attorney. Clark wanted his attorney to do the impossible and get the case dismissed. Thus, Clark's attitude contributed to any conflict he had with his attorney. In addition, a third attorney could not get the case dismissed if he pursued Clark's reasoning as outlined above.

Clark relies on *State v. Deal* (1969), 17 Ohio St .2d 17 to support his claim that the trial court failed to conduct an adequate hearing regarding his complaint about his retained counsel. "However, *Deal* and its progeny only impose a duty upon a

trial court to inquire on the record about complaints a defendant has raised regarding his *appointed* counsel[,]" not retained counsel. (Cites omitted.) *State v. Downing,* Greene App. No. 01-CA-78, 2002-Ohio-1302. See, also, *State v. King* (1995), 104 Ohio App.3d 434, 437; *State v. Bowshier,* Clark App. No. 06-CA-41, 2007-Ohio-5364, ¶ 54. Moreover, the trial court patiently listened to Clark before and after the jury selection to explain the problems he had with his counsel as indicated by several exchanges between the court and Clark regarding Clark's counsel.

Therefore, based on these circumstances, we find that the trial court did not abuse its discretion in denying Clark's request to continue the trial to substitute retained counsel.

Clark further contends that the court should have at least allowed him to substitute counsel without a continuance. Clark does not cite to a single authority that would allow the court to make such a decision. Further, we can find no authority that would permit a trial court to allow newly retained counsel, without any knowledge of the case, to proceed.

Accordingly, we overrule Clark's first assignment of error.

*State v. Clark,* No. 2007 WL 4328051 at *2-*3.[1]   The factual findings of the state appellate

---

[1] Judge P.J. McFarland issued a dissenting opinion as follows:

I respectfully dissent because the record below is very troublesome. This is readily apparent after reviewing and considering the dialogue between the Appellant, his counsel and the court regarding the legal representation of the Appellant. The record reveals the Appellant told the court about his displeasure with his retained counsel and his desire to fire him. He specifically stated that "Counsel has failed to represent me." He went on to say "I'm asking you to let me hire another counsel." The Court responded by saying, among other things, "you're not going to have a right to hire other counsel."

After this exchange between the Appellant and the Court, his retained counsel stated: **"Your Honor, I can't, I cannot**

court are presumed to be correct.  28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

---

> **represent him when he's saying this. What's quite clear here is I am representing him and I have been trying to do a good job.** *And after he makes a statement like that I don't even want to help him. Alright ?"* (Emphasis added.)

> In my view, it was an abuse of discretion for the trial court to proceed with the jury trial after this alarming statement from counsel. Any jurist hearing such a statement should be very concerned about the impact it has on the Appellant's subjective belief about his legal representation and the fairness of the proceedings. The record, at a minimum, shows a significant conflict between counsel and the Appellant that was left unresolved.

> As such, the trial court should have continued the trial and permitted Appellant the opportunity to seek other counsel or proceed pro se. In hearing these statements by counsel, yet requiring the same counsel to remain at the trial, the court below tainted the process and acted unreasonably.

> I realize it can be very frustrating to a trial court when an accused acts the way the Appellant did in the proceeding below. However, that frustration should yield to the greater interest of providing equal justice under the law, particularly when an accused hears his attorney does not want to help him.

> Accordingly, I dissent.

*State v. Clark,* 2007 WL 4328051 at *6 (McFarland, J., dissenting).

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented.  28

U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As discussed by the United States Court of Appeals for the Sixth Circuit in *Boykin v. Webb*,

541 F.3d 638, 642 (6th Cir. 2008),

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case. *Id*. The court may look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). Finally, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's

> factual findings were correct. See 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

*Id*. Petitioner has failed to meet this standard here.

Petitioner contends that this Court should conduct a *de novo* review, because the state appellate court misconstrued his claim as one regarding the improper denial of a continuance, rather than a claim regarding the denial of counsel (or the effective assistance of counsel), and an improper failure of the trial court to inquire into the alleged conflict of interest. *See Traverse*. This Court is not persuaded by petitioner's argument.

Review of the record indicates that petitioner specifically argued on direct appeal, that the trial court should have granted him a continuance so that he could retain new counsel because he indicated that he was not adequately represented, and  alternatively, the trial court should have permitted him to hire a new attorney without a continuance. *See Exhibit 12 to Return of Writ*.  This Court likewise considers these same claims here.

To the extent that petitioner asserts that the trial court abused its discretion in refusing to grant his request for a continuance in violation of state law, this claim fails to present an issue appropriate for federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.

1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Petitioner does assert that he was denied the right to counsel of his own choice and due process when the trial court failed to conduct adequate inquiry into his dissatisfaction with retained counsel on the eve of trial. The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). This right encompasses the "right of a defendant who does not require appointed counsel to choose who will represent him" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006)(citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, "[t]o be sure, the right to counsel of choice 'is circumscribed in several important respects.'" *United States v. Gonzalez-Lopez*, 548U.S. at 144 (quoting *Wheat v. United States*, 486 U.S. at 159).

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159, 108 S.Ct. 1692; *Caplin & Drysdale*, 491 U.S., at 624, 626, 109 S.Ct. 2646. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. *See Wheat*, 486 U.S., at 159-160, 108 S.Ct. 1692.

> We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.,* at 163-164, 108 S.Ct. 1692, and against the demands of its calendar, *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra,* at 160, 108 S.Ct. 1692.

*United States v. Gonzalez-Lopez*, 548 U.S. at 151-52.  Additionally,

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney,* 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982-1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).  The Sixth Amendment does not guarantee the defendant a "meaningful relationship" with his attorney.  *Id*. at 14.  The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the district court. *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004). In considering a request to substitute counsel, the Court must consider "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total

11

lack of communication preventing an adequate defense." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008). "Consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. *Id.* at 939 (footnote and citations omitted). Further,

> Denial of a continuance rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...." *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)); *seeUngar,*376 U.S. at 591, 84 S.Ct. 841 ("These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional."). The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Ungar*, 376 U.S. at 589, 84 S.Ct. 841 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins,* 332 F.3d 376, 396 (6th Cir.2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

*Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).

Here, on the day that jury selection was about to begin, petitioner's defense counsel,

Attorney Gander advised the trial court that petitioner wanted a new attorney:

> In my discussions with my client, Mr. Clark, regarding a possible plea offer that the Prosecuting Attorney made I indicated to Mr. Clark that I thought it was a fair offer in terms

of what the evidence was against him in the case. He indicated to me that he is not happy with my representation, that he wants to discharge me. And I don't know whether he wants to represent himself or request a new attorney from the court. But I'm not really too enthusiastic about representing him at this point. We were in court about a month ago regarding, obviously, the motion... regarding the competency. Mr. Clark has continuously over the course of my representation basically made it clear to me that he doesn't think I'm zealously representing him and doing the best job that I can. And quite frankly, I'm not too happy representing him. And I told him he would have to address the Court and... see what the Court has to say about that. So if you want to inquire of him or let him make a statement then I think we should address that at this point. Actually, if he is going to do that I would actually join the request and ask to be withdrawn as his counsel in this case.

JUDGE: Well the Court is not going to approve that. But I'll allow Mr. Clark to say whatever he wants to say about it. We went down this road once before. Mr. Clark, do you want to comment on what Mr. Gander just told me?

MR. CLARK: Yes. Mr. Gander has refused to represent me. He refused to come and see me. He refuses to listen to me. My constitutional rights have been violated.... The State has no case, no evidence. The case never went in front of a grand jury. My Bill of Particulars ain't signed by the grand jury. The proves that the case never went in front of the grand jury. And Mr. Gander refuses to represent me. I asked him two months ago to have my witnesses locked in. Now my witnesses, my alibis, are denied. How could you deny my alibis when that's where I was? I can prove where I was. The State cannot prove where I was. I can prove where I was. Mr. Gander refused to get my witnesses in. He refused to represent me period. How can I go to trial if I can't explain myself? How can I go to trial if I can't prove where I was? If you deny me all this then you're not giving me a fair trial. You're denying me my right to due process. You're denying me my right to a fair trial. And if Mr. Gander refuses to represent me how can I continue on? Because I'm not going to jail for something I didn't do,

something I can prove never happened.  I can prove where I was every day.  The State can't prove where I was.  The State has nothing.  What's in my discovery?  A phone bill?  What's that prove?  My Bill of Particulars ain't signed by the grand jury.  What's that prove?  That proves that the grand jury never seen no evidence.  You just can't make up an indictment because you don't like me.  You just can't try me because you think I've done something.  You've got to prove I've done something.  You've got to have evidence I done something.  You got some fingerprints, some DNA, some audio, some video?  What do you have?  You have nothing against me.  Allegations.  Just because someone says I done something don't mean I did it.  You've got to prove.  And he failed to do that.  He failed to represent me.  So how can I continue on to trial if I can't prove my innocence?

COURT: Well we are going to continue with this trial.  All right.  I've heard you out, Mr. Clark.  Does the State wish to respond?

MR. WARREN: The jury is available.  It's the discretion of the Court how you want to proceed.  He is privately retained counsel.  But the jury is already here.  The State is ready to proceed.

MR. CLARK: I'm ready to obtain new counsel.

COURT: Well Mr. Gander, you're going to assist Mr. Clark at least through the selection of a jury.  After a jury is seated if Mr. Clark still feels the same way he does about this matter we'll take that up then.  But first we have to, we've had a jury out here waiting for an hour and a half or so.  We now have to proceed to select the jury.

*Trial Transcript,* at 7-10.  After a jury was seated, the following exchange took place:

MR. GANDER: I believe Mr. Clark still wants to terminate my representation.

COURT: Is that your intention, Mr. Clark?

14

MR. CLARK: Yes.  I need my alibi witnesses.

COURT: I don't know who your alibi witnesses are, but I can tell you I just explained to your counsel here at the table just a few minutes ago that the three witnesses that he subpoenaed I'm going to allow him to call those witnesses.  Now I don't know whether that's all the witnesses you're talking about, or if those are the people that your're calling alibi witnesses or not....

MR. CLARK: My three alibis was Joanne Wolfe, my mother, and my brother....

COURT: Well a notice of alibi is a procedure you have to follow when you file a notice of alibi.  There's been no notice of alibi filed here.  But when we started the day Mr. Gander told me that he had three or four witnesses that he wished to call.... So I... indicated that they could be called.  These other people I don't know anything about.  And of course I can tell you, anybody is going to tell you it's very foolish to proceed on your own, but if you discharge Mr. Gander that's what you'll have to do unless Mr. Gander remains only as an advisor.

MR. CLARK: So you're refusing me to hire other counsel?

COURT: We've been through this once before.  You terminated the services of another attorney, if you recall that.  And now you have Mr. Gander who, despite what you think, has vigorously represented you.

MR. CLARK: If an attorney is not representing you then you must fire them.

COURT: That's your definition.  And you say he hasn't represented you.  Now I don't want to sit here and argue with you.  The question is do you want Mr. Gander to continue.  You have three choices.  One, he can continue to be your counsel.  Two, he can be your advisor.  Or three, you can proceed without him.  Those are your three choices.

MR. GANDER: I believe what he wants to know is... whether

15

you're going to grant him a continuance to get another attorney.

COURT. No. I can't. We seated a jury. We continued the case once before at your request for reasons that were carefully explained here on the record. And we're not going to continue it again.

MR. CLARK: So you're going to deny me counsel.

COURT: No. You have counsel. It's up to you.

MR. CLARK: Counsel failed to represent me.

COURT: That's what you say.

MR. CLARK: He didn't. I told him two months ago the witnesses that must be called, my alibi witnesses. Them other three witnesses mean nothing. I can prove where I was. The State can't prove where I was. If you deny me my alibi witnesses you deny me my right to a fair trial. If Mr. Gander refused to listen to me and subpoena in my alibi witnesses, then he failed to represent me.

COURT: That's an issue I'm not going to be able to decide for you.... What I have to decide is do I allow you to represent yourself, which I don't want to do. I want you to have somebody to be able to help you.... You have the right to represent yourself if you wish to do so.

MR. CLARK: I have the right to hire another counsel.

COURT: Well, we gave you that right once before and you selected your own counsel.

MR. CLARK: I have the right to fire three attorneys if they fail to represent me. This would be the second one. Mr. Tyack refused. Now Mr. Gander refuses. They had five months to prepare a defense for me and they failed to do so. Now here I sit the day of the trial with no witnesses, no nothing. The Court cannot deny me my right for a fair trial....

16

\*\*\*

I can't help it if Mr. Gander refused to represent me. I sent him several letters throughout the three, four months and tried and tried to get him to do what I want him to do. If you hire an attorney they must represent you in the way that you want them to represent you, by the law. If they refuse to listen to you or come and see you and do what must be done in your case, they fail to represent you, they refuse to represent you.

COURT: You're asking me to pass judgment on the status of your representation. I cannot do that.

MR. CLARK: I'm asking you to let me hire another counsel. I have a right to hire three counsels. This would be the second one that refused to represent me. And I have the right to hire another counsel.

COURT: I don't know where you got ... this premise that you have three... strikes and you're out.... The answer is you're not going to have a right to hire other counsel. Now... do you want [Mr. Gander] to be your counsel in this trial or not?

MR. CLARK: I made it clear that Mr. Gander, he refused to represent me.

MR. GANDER: Your honor... I think he's made it quite clear.

*Trial Transcript,* at 89-94. The trial court again advised petitioner that he had three choices – to proceed *pro se*, to proceed *pro se* with Attorney Gander as his advisor, or to continue to trial with Attorney Gander as defense counsel. *Id*. at 94. When petitioner maintained his desire to hire new counsel, Attorney Gander stated:

You're Honor, I can't, I cannot represent him when he's saying this. And he's made these statements before to me. All right? What's quite clear here is I am representing him and I have been trying to do a good job. And after he makes a statement like that I don't even want to help him. All right?

17

*Id.*, at 96.  The trial judge then again asked petitioner if he wanted to proceed *pro se,* to which petitioner responded, "I can't represent myself.  I'm not no lawyer."  *Id.* at 96-97.  The trial judge directed that Attorney Gander remain on as defense counsel.  *Id.* at 97.

Here, the Court concludes that petitioner's request for substitution of counsel on the day set for trial was untimely.  *See Brooks v. Lafler*, 2009 WL 1269700 (E.D. Mich. April 30, 2009)(citing *United States v. Trujillo*, 376 F.3d 593, 606-607 (6th Cir. 2004); *United States v. Wilhite*, 108 Fed.Appx. 367, 369 (6th Cir. 2004); *United States v. Reevey*, 364 F.3d 151, 157 (4th Cir. 2004)("a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances'")).  Further, when the trial court inquired as to the reasons for Petitioner's dissatisfaction with counsel, as noted by the state appellate court, the majority of petitioner's complaints centered around defense counsel's inability to obtain a dismissal of the charges against him on baseless grounds and his contention that he had been improperly charged or was innocent of the charges against him.  Petitioner also complained that his attorney had failed to subpoena alibi witnesses; however, one of those witnesses, JoAnne Wolfe, was called as a defense witness.  *Trial Transcript*, at 252.[2]  Nothing in the record reflects that either of the other witnesses referred to would have assisted the defense.  Further, the trial court noted that petitioner had previously dismissed his prior attorney under similar circumstances, and that this was not the first trial continuance granted to the defense.  Although defense

---

[2] Defense counsel also called Shane Barnhart and Sunshine Mayles as defense witnesses.  *Trial Transcript*, at 211, 239.

counsel expressed that he was not pleased to be representing the petitioner under the circumstances, nothing in the record reflects a conflict such that petitioner was denied an adequate defense.

In short, the record fails to reflect that petitioner was denied due process or the right to counsel when the trial court refused to grant his untimely request for substitution of counsel, or that the state appellate court's rejection of his claims was unreasonable so as to warrant federal habeas corpus relief. *See* 28 U.S.C. § 2254(d),(e); *Williams v. Taylor*.

## CLAIM THREE: PROCEDURAL DEFAULT

In claim three, petitioner asserts that the trial court's imposition of more than minimum terms of incarceration after *State v. Foster*, 109 Ohio St.3d 1 (2006), violated due process. Respondent contends that this claim is procedurally defaulted because petitioner failed to raise this objection at sentencing.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims

to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 447 U.S. 478, 485 (1986); *Engle v. Issac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a reviewing court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In this case, petitioner properly raised claim three on direct appeal; however, the appellate court reviewed his claims for plain error only, due to petitioner's failure to object

at sentencing:

Clark contends in his third assignment of error that the trial court erred by imposing a non-minimum sentence. He maintains that the sentence violates the Due Process Clause of the United States Constitution. Specifically, he claims that the Supreme Court of Ohio's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, which followed the reasoning in *Blakely v. Washington* (2004), 542 U.S. 296, deprived him of a statutory liberty interest when it removes procedural safeguards in a statute.

Clark did not raise his due process argument in the trial court. He received his sentence after *Blakely, supra*, was decided on June 24, 2004. Thus, he has forfeited all but plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 31 ("we hold that a lack of an objection in the trial court forfeits the *Blakely* issue for purposes of appeal when the sentencing occurred after the announcement of *Blakely*.").

Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, although a defendant did not bring them to the attention of the court. The Supreme Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68. *See Payne, supra.* First, an error must exist. *Id.*, citing *State v. Hill* (2001), 92 Ohio St.3d 191, 200, citing *United States v. Olano* (1993), 507 U.S. 725, 732 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b] ). Second, the error must be plain, obvious, or clear. *Id.* (Citations omitted.) Third, the error must affect "substantial rights," which the court has interpreted to mean "but for the error, the outcome of the trial clearly would have been otherwise." *Id.* citing *Hill* at 205; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62; *State v. Long* (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.

"The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome 'would have been different absent

the error.' " (Cite omitted.) *Payne* at ¶ 17. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long, supra*, at paragraph three of the syllabus.

In *State v. Grimes*, Washington App. No. 06CA17, 2006-Ohio-6360, this court considered and rejected a due process challenge to a sentence imposed in accordance with the Supreme Court of Ohio's holding in *Foster*. There, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. In doing so, those courts expressed that it is unlikely that the Supreme Court of Ohio would have directed lower level courts to violate the Constitution; and, in any event, the appellate courts are bound by directives of the Supreme Court of Ohio. *Id.* at ¶ 8, citing *State v. Hildreth,* Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; *State v. Durbin*, Greene App. No.2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.

In finding that the Supreme Court of Ohio's remedy in *Foster* does not violate the Due Process Clause of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in *State v. McGhee*, Shelby App. No. 17-06-05, 2006-Ohio-5162. *Grimes* at ¶ 9, citing with approval *McGhee* at ¶¶ 11 & 13-20. Because the range of prison terms for the defendant's offense remained the same both before and after *Foster,* we concluded, "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." *Id.* at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Supreme Court of Ohio would strike down parts of R.C. 2929.14. *Id.* Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. *Id.* at ¶ 11.

Based upon our holding in *Grimes* (and numerous decisions following *Grimes*), we find that the trial court did not err in imposing non-minimum sentences for Clark's offenses. *See, also, State v. Miller,* Auglaize App. No. 2-07-02, 2007-Ohio-4744

22

> ( *Foster* does not violate the Due Process Clause of the United States Constitution). We do not accept Clark's implied invitation to revisit these issues. Therefore, we do not find any error, let alone plain error.
>
> Accordingly, we overrule Clark's third assignment of error.

*State v. Clark*, 2007 WL 4328051 at *4.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir.2000). As explained by the United States District Court for the Northern District of Ohio in *Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D. Ohio 2007):

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), cert. denied, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing State v. Smith, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst, v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Id.* This Court likewise concludes that petitioner has waived the right to present claim three in these habeas corpus proceedings.

Petitioner contends that he preserved claim three for federal habeas corpus review by generally objecting to imposition of maximum consecutive terms or requesting minimum concurrent terms of incarceration.[3]  Petitioner has failed show by clear and convincing evidence, however, that the state appellate court's factual determination that he failed to preserve this issue is incorrect.  28 U.S.C. § 2254(e).  Further, a general request for a lesser sentence or objection to imposition of maximum or consecutive terms of incarceration would not necessarily preserve petitioner's claim that application of *Foster* denied him due process.

Petitioner can still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to establish cause for his procedural defaults relating to these claims.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether

---

[3]  The sentencing transcript has not been made a part of the record before this Court.

this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse

decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

_/s/ Elizabeth A. Preston Deavers_
United States Magistrate Judge